Bond #: 504957P

# Archer Western Contractors LLC

## SUBCONTRACTOR PERFORMANCE BOND ("Bond")

KNOW ALL PERSONS BY THESE PRESENTS; that

**SUBCONTRACTOR** Prince Land Services, Inc.
**Address** 200 F Street South
Haines City, FL 33844

as Principal (the "Subcontractor"), and

**SURETY (or sureties)** Developers Surety and Indemnity Company
**Address** 100 Second Avenue South, Suite 704 South Tower
St. Petersburg, FL 33701

as Surety or Co-Sureties (hereinafter collectively referred to as "the Surety"), are held and firmly bound unto

**Archer Western Contractors LLC** 929 W. Adams Street, Chicago Illinois, 60607, as Obligee (hereinafter "Obligee"), in the penal sum of Seven Hundred Ten Thousand, Eight Hundred Ninety-Five Dollars and Ninety-Three Cents DOLLARS ($ 710,895.93 ) (the "Subcontract Price"), for the payment of which the Subcontractor and Surety bind themselves, and their respective heirs, administrators, executors, successors and assigns, jointly and severally, firmly by these presents.

**WHEREAS**, Subcontractor has by written agreement dated May 21, 2012 entered into Subcontract Number 211186S07 with Obligee for the performance of

**SUBCONTRACT WORK** Installation of Landscape and Irrigation at CFCRT Sunrail project

which subcontract is by reference made a part hereof (the "Subcontract") for and at the
**PROJECT** Orlando Sunrail Station Finishes

**NOW, THEREFORE**, Surety and Subcontractor agree to be bound as follows:

1. **If Subcontractor shall promptly and faithfully perform said Subcontract, then this obligation shall be null and void; otherwise it shall remain in full force and effect.**

2. The Surety agrees that no change, extension of time, alteration, addition, deletion, amendments or other modification of the terms of either the said Subcontract or the Prime Contract between Obligee and the Project Owner, or both, or in the said work to be performed, or in the specifications, or in the plans shall in anywise affect its obligations on this Bond except that the penal sum of this Bond shall increase directly with any amendments issued to the Subcontract; and it does hereby waive notice of any such changes, extensions of time, alterations, additions, deletions, amendments, and other modifications.

3. In the event Subcontractor shall require financing assistance to complete the Subcontract Work, the Surety may finance Subcontractor to completion of its Subcontract Work. Direct reasonable Project-related completion costs financed by the Surety and not refunded to Surety by Subcontractor, excluding interest expenses and other administrative expenses, shall reduce the penal sum of this Bond. The foregoing shall be subject to the prior written approval of the Obligee of the financing and the financing plan, as well as any deviations from the original financing plan.

4. Whenever Obligee has declared Subcontractor to be **IN DEFAULT OF THE SUBCONTRACT**, the Surety shall, within fifteen (15) calendar days of its receipt of notice from Obligee that Subcontractor is in default, respond as follows:

Exhibit "B"

a. Complete the Subcontract Work in accordance with the Subcontract terms and conditions; or

b. Obtain bids or offers from contractors acceptable to Obligee for completing the Subcontract in accordance with its terms and conditions, and upon determination by Obligee and the Surety jointly of the lowest responsible bidder or offeror, arrange for a subcontract between such completion contractor and the Obligee, and arrange for new performance and payment bonds for such completion contractor from a surety acceptable to the Obligee. Upon acceptance of the completion contractor by the Obligee, the Surety shall pay to the Obligee the difference between the cost to complete the Subcontract work and the balance of the Subcontract Price, including the cost of obtaining new performance and payment bonds; or

c. Tender to Obligee the penal sum of the Bond less any amounts expended by the Surety in financing the Subcontractor pursuant to Paragraphs 3. or 4(e) hereof.

d. Having made an independent investigation of the facts and circumstances of the alleged default, deny its liability in whole or in part and notify and explain to the Obligee the reasons why the Surety believes it does not have liability for the default, in which event Obligee may proceed to take such action as may be allowed under the Subcontract or at law and the Surety's liability shall be determined in accordance with Paragraph 10 hereof.

e. Upon request, Surety shall be entitled to obtain an extension of up to fifty (50) calendar days in the time to act under this Paragraph 4 by financing performance of the Subcontract Work during the extension period on a schedule and in a manner acceptable to Obligee. The cost of such financing assistance provided by Surety shall reduce the penal sum of this Bond, but Obligee shall have no obligation to reimburse Surety or otherwise pay for the work performed until Surety has committed to remedy the default pursuant to this Subparagraphs 4, and then only from funds earned under the Subcontract. To the extent the cost of such financing assistance exceeds the amount earned under the terms of the Subcontract for the work accomplished, such costs shall not be refunded to the Surety but shall be applied to reduce the penal sum of this Bond.

5. Upon the issuance of written notice by Surety to Obligee of the commitment to remedy the default through one of the options set forth in Paragraphs 4, Obligee shall make available as Subcontract Work progresses, the balance of the Subcontract Price. The term "balance of the Subcontract Price" as used in this Paragraph and Subparagraph 4(b), shall mean the amount of the Subcontract Price, including any amendments issued thereto prior to the declaration of default, less the amount paid by Obligee to Subcontractor in accordance with the terms of the Subcontract, and less any other amounts for which Surety is liable under this Bond.

6. The Surety shall be liable for:

   a. The responsibilities of the Subcontractor for correction of defective work and completion of the Subcontract Work.

   b. The responsibilities of the Subcontractor for additional legal and design professional costs resulting or arising from the Subcontractor's default, or resulting or arising from the actions or failure to act of the Surety under Paragraph 4 herein.

   c. The responsibilities of the Subcontractor for liquidated damages, or if no liquidated damages are specified in the Subcontract, actual damages caused by the delayed performance or non-performance of the Subcontractor.

   d. The Surety's liability under this Paragraph 6 shall not exceed, in the aggregate, the penal sum set forth on the cover page of this Bond, subject to Paragraph 2.

7. Surety agrees to pay Obligee its reasonable attorney's fees and costs in the event that suit on this Bond is commenced and successfully prosecuted by Obligee.

8. If it is determined that Obligee's declaration of the Subcontractor default was not justified under the Subcontract, Obligee shall pay Surety an amount equal to Surety's losses, expenses and reasonable attorney's fees in performing under this Bond.

9. No right of action shall accrue on this Bond to or for the use of any person or corporation other than Obligee or the heirs, executors, administrators, assigns or successors of Obligee.

10. In the event of a dispute between Surety and Obligee related to the Subcontract or Bond, then either Surety or Obligee may institute litigation in the state or federal court where the project is located.

IN WITNESS WHEREOF, the Subcontractor and Surety have hereunto caused this Bond to be duly executed and acknowledged as set forth below this ___7th___ day of _September_____, 201_2_.

(Impress Corporate Seal)

ATTEST:

M. Pelzer
(Name)
Monica Pelzer

Prince Land Services, Inc.
(Name of Subcontractor)

By: _____
(Officer) Bruce R Prince

President
(Title)

(Impress Corporate Seal)

ATTEST:

_____
(Name) Samantha Dent, As-To-Surety

Developers Surety and Indemnity Company, Surety
(Name of Surety)

By: _____
David B. Shick, (Attorney-in-Fact)

(Impress Corporate Seal)

ATTEST:

_____
(Name)

_____, Co-Surety
(Name of Surety)              (If applicable)

By: _____
(Attorney-in-Fact)

**POWER OF ATTORNEY FOR**
**DEVELOPERS SURETY AND INDEMNITY COMPANY**
PO Box 19725, IRVINE, CA 92623 (949) 263-3300

KNOW ALL BY THESE PRESENTS that except as expressly limited, DEVELOPERS SURETY AND INDEMNITY COMPANY, does hereby make, constitute and appoint:

***David B. Shick***

as its true and lawful Attorney(s)-In-Fact, to make, execute, deliver and acknowledge, for and on behalf of said corporation, as surety, bonds, undertakings and contracts of suretyship giving and granting unto said Attorney(s)-In-Fact full power and authority to do and to perform every act necessary, requisite or proper to be done in connection therewith as each of said corporation could do, but reserving to each of said corporation full power of substitution and revocation, and all of the acts of said Attorney(s)-In-Fact, pursuant to these presents, are hereby ratified and confirmed.

This Power of Attorney is granted and is signed by facsimile under and by authority of the following resolution adopted by the Board of Directors of DEVELOPERS SURETY AND INDEMNITY COMPANY, effective as of January 1st, 2008.

RESOLVED, that a combination of any two of the Chairman of the Board, the President, any Executive Vice-President, Senior Vice-President or Vice-President of the corporation be, and that each of them hereby is, authorized to execute this Power of Attorney, qualifying the attorney(s) named in the Power of Attorney to execute, on behalf of the corporation, bonds, undertakings and contracts of suretyship; and that the Secretary or any Assistant Secretary of the corporation be, and each of them hereby is, authorized to attest the execution of any such Power of Attorney;

RESOLVED, FURTHER, that the signatures of such officers may be affixed to any such Power of Attorney or to any certificate relating thereto by facsimile, and any such Power of Attorney or certificate bearing such facsimile signatures shall be valid and binding upon the corporation when so affixed and in the future with respect to any bond, undertaking or contract of suretyship to which it is attached.

IN WITNESS WHEREOF, DEVELOPERS SURETY AND INDEMNITY COMPANY has caused these presents to be signed by its officers and attested by its Secretary or Assistant Secretary this October 4th, 2011.

By: _____
Daniel Young, Senior Vice-President

By: _____
Steve A. Tvedt, Vice-President

State of California
County of Orange

On ___October 4, 2011___ before me, ___Antonio Alvarado, Notary Public___
    Date                                   Here Insert Name and Title of the Officer

personally appeared ___Daniel Young and Steve A. Tvedt___
                       Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
           Antonio Alvarado, Notary Public

Place Notary Seal Above

**CERTIFICATE**

The undersigned, as Secretary or Assistant Secretary of DEVELOPERS SURETY AND INDEMNITY COMPANY does hereby certify that the foregoing Power of Attorney remains in full force and has not been revoked and, furthermore, that the provisions of the resolution of the Board of Directors of said corporation set forth in the Power of Attorney are in force as of the date of this Certificate.

This Certificate is executed in the City of Irvine, California, this 7th day of September 2012

By: _____
Gregg Okura, Assistant Secretary

ID-1436(Rev.10/11)