UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:16-cv-1875-Orl-40KRS

DEVELOPERS SURETY AND INDEMNITY
COMPANY, a foreign corporation,

    Plaintiff,

v.

ARCHER WESTERN CONTRACTORS, LLC,
a foreign corporation,

    Defendant.
_____/

## AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff, DEVELOPERS SURETY AND INDEMNITY COMPANY, hereby sues Defendant, ARCHER WESTERN CONTRACTORS, LLC, and alleges as follows:

### I. JURISDICTION AND VENUE

1. This is an action for declaratory judgment and supplemental relief under 28 U.S.C. §§220l and 2202.

2. Subject matter jurisdiction is based upon 28 U.S.C. §1332(a)(1), diversity of citizenship. The parties are citizens of different states and the amount in controversy exceeds the jurisdictional limits of this Court.

3. Plaintiff, DEVELOPERS SURETY AND INDEMNITY COMPANY ("DSIC"), is a corporation organized and existing under the laws of the State of Iowa, whose principal place of business is located in Irvine, California, and who is duly registered and authorized to do business in the State of Florida. DSIC is a citizen of the states of Iowa and California.

4.      Defendant, ARCHER WESTERN CONTRACTORS, LLC ("AWC"), is a Delaware limited liability company with its headquarters in Chicago, Illinois.  The members of AWC are The Walsh Group, Ltd., Matthew M. Walsh, and Daniel J. Walsh.  The Walsh Group, Ltd is an Illinois corporation with its principal place of business in Chicago, Illinois.  Matthew M. Walsh and Daniel J. Walsh are citizens of Illinois.

5.      The amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees, and this Court otherwise has jurisdiction over the subject matter hereof.

6.      Venue is proper in this Court because the contract at issue in this case was to be performed in this jurisdiction.

7.      All conditions precedent to the filing of the instant action have occurred or have otherwise been waived.

## II.  GENERAL ALLEGATIONS

8.      **The *Subcontract*.**  On or about May 21, 2012, AWC, as contractor, and Prince Land Services, Inc. ("Prince"), as subcontractor, entered into a formal *Subcontract Agreement* (the "*Subcontract*") for the performance of certain enunciated "Landscaping and Irrigation" work on the project commonly known as the "Orlando Sunrail Station Finishes" (the "Project").  A copy of the *Subcontract* is attached hereto and made a part hereof as **Exhibit "A"**.

9.      Upon a declaration of default, Article 8.1 of the *Subcontract* provides AWC with certain remedies exclusively against Prince and the *Subcontract* funds:

> (i) *supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the completion of the Subcontractors Work*, or any part thereof which the Subcontractor has failed to complete or perform after the aforesaid notice, and ***charge the cost thereof to the Subcontractor***, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees; (ii) *contract with one or more additional contractors to perform such part of the Subcontractor's Work* as the Contractor shall determine will provide the must expeditious completion of the total Work and ***charge the cost thereof***

> *to the Subcontractor* who shall be liable for the payment of same including reasonable overhead and profit; (iii) discharge the claim of non-payment; and/or (iv) ***withhold payment of any moneys due the Subcontractor*** pending corrective action to the extent required by and to the satisfaction of the Contractor, Owner and the Architect/Engineer.  *Any costs incurred by Contractor under this article, including attorneys' fees, **shall to deducted from funds otherwise due Subcontractor under this Agreement***. (Emphasis added)

10. Upon default ***and*** termination, Article 8.2 of the *Subcontract* provides AWC with certain remedies against Prince and DSIC:

> ***In the event of Termination for Default***, Subcontractor shall receive no further payment of any unpaid portion of the Subcontract Price until such time as the Subcontract Work is completed, at which time Subcontractor will be entitled to the unpaid portion of the Subcontract Price, less all of the costs incurred by the Contractor in so performing the Subcontractor's Work, including reasonable overhead, profit, liquidated or consequential damages, and attorneys' fees, which shall be deducted from any moneys due or to become due the Subcontractor. *The Subcontractor **and its surety** shall be liable for the payment of any amount by which such expense may exceed the unpaid balance of the Subcontract Amount.*  (Emphasis added)

11. **The *Performance Bond***.  On or about September 7, 2012, DSIC issued the *Subcontractor Performance Bond* bearing no. 504957P (the "*Bond*") on behalf of Prince, as principal, with AWC, as obligee, covering Prince's bonded work under the *Subcontract*.  A copy of the *Bond* is attached hereto and made a part hereof as **Exhibit "B"**.

12. Paragraph 4 of the *Bond* specifically provides DSIC with the bargained-for-right to mitigate damages by remedying any alleged default of Prince under the *Subcontract*:

> ***Whenever Obligee has declared Subcontractor to be IN DEFAULT OF THE SUBCONTRACT***, the Surety shall, within fifteen (15) calendar days of its receipt of notice from Obligee that Subcontractor is in default, respond as follows:
>
> a. **Complete the Subcontract Work in accordance with the Subcontract terms and conditions**; or
>
> b. ***Obtain bids or offers from contractors acceptable to Obligee for completing the Subcontract in accordance with its terms and conditions***, and upon determination by Obligee and the Surety jointly

        of the lowest responsible bidder or offeror, arrange for a subcontract between such completion contractor and the Obligee, and arrange for new performance and payment bonds for such completion contractor from a surety acceptable to the Obligee. Upon acceptance of the completion contractor by the Obligee, the Surety shall pay to the Obligee the difference between the cost to complete the Subcontract work and the balance of the Subcontract Price. including the cost of obtaining new performance and payment bonds; or

   c.  Tender to Obligee the penal Sum of the Bond less any amounts expended by the Surety in financing the Subcontractor pursuant to Paragraphs 3. or 4(e) hereof.

   d.  Having made an independent investigation of the facts and circumstances of the alleged default, deny its liability in whole or in part and notify and explain to the Obligee the reasons why the Surety believes it does not have liability for the default, in which event Obligee may proceed to take such action as may be allowed under the Subcontract or at law and the Surety's liability shall be determined in accordance with Paragraph 10 hereof.  (Emphasis added)

13.   **The *Subcontract* Dispute**.  From 2012 through the spring of 2014, Prince performed its obligations under the *Subcontract*.  As the Project was nearing completion, issues arose between Prince and AWC concerning portions of Prince's work.

14.   On July 3, 2014, AWC issued a letter to Prince, alleging that the work provided by Prince in accordance with the *Subcontract* failed to meet the requirements of landscaping and irrigation for the Project, and provided Prince with 72-hours to cure the alleged deficiencies.  The cure notice was issued in accordance with Articles 8.1 ("Failure to Perform and Default") and 7.11 ("Warranty Provisions") of the *Subcontract*.  A copy of AWC's correspondence dated July 3, 2014 is attached hereto and made a part hereof as **Exhibit "C"**.

15.   AWC *never* terminated Prince's rights under the *Subcontract*.  In particular, at no time did AWC seek to enforce its rights under *Subcontract* Section 8.2 ("Failure of Performance – Termination for Default by Contractor").

16. **AWC's Initial Claim Under *Bond* and DSIC's Response**. By its correspondence dated July 9, 2014, AWC, by and through its corporate counsel, Eric Klupp, declared Prince to be in default of the *Subcontract*, asserted a claim and demanded DSIC to perform under the *Bond*. A copy of AWC's correspondence dated July 9, 2014 is attached hereto and made a part hereof as **Exhibit "D"**.

17. On July 14, 2014, three (3) business days after receipt of AWC's initial communication, DSIC responded to AWC: (a) indicating that DSIC had "commenced a preliminary investigation"; (b) providing AWC with a detailed list for information/documentation necessary for its investigation; (c) requesting a meeting with AWC to discuss the default allegations; and (d) advising that DSIC would formally respond to AWC claim "within fifteen (15) calendar dates of receipt of the foregoing enumerated documents." A copy of DSIC's correspondence dated July 14, 2014 is attached hereto and made a part hereof as **Exhibit "E"**.

18. AWC failed to respond, verbally or in writing, to DSIC's July 14, 2014 correspondence.

19. DSIC made numerous efforts following its July 14, 2014 correspondence to communicate with AWC, obtain the requested information and documentation, and meet with AWC's personnel, all to no avail.

20. On July 18, 2014, DSIC issued lengthy e-mail correspondence to AWC: (a) seeking confirmation of receipt of the July 14, 2014 correspondence due to AWC's failure to respond; (b) advising that time is of the essence given AWC's bond form providing DSIC 15-days to respond; (c) declaring that the 15-day period had not commenced to run and the necessity of the requested information to adequately respond to the claim; (d) informing the investigative action undertaken by DSIC; and (e) reiterated its request for a meeting "*as soon as possible* to review its documents in connection with this matter and discuss the outstanding issues between Prince and AW[C]." A

copy of DSIC's e-mail correspondence dated July 18, 2014 is attached hereto and made a part hereof as **Exhibit "F"**.

21. AWC failed to respond, verbally or in writing, to DSIC's July 18, 2014 correspondence.

22. Due to AWC's lack of response, on or about July 29, 2014, counsel for DSIC contacted AWC's corporate counsel, who acknowledged DSIC's correspondence, advised that the requested documents would be provided and that AWC's project staff would be in contact with DSIC to arrange a meeting, and extended the 15-day requirement until AWC provided DSIC with the requested documentation. At no time during the July 29, 2014 conversation did AWC's general counsel disclose to DSIC that AWC had retained or intended to retain a completion contractor to complete the bonded *Subcontract* work.

23. Despite AWC's promises, AWC <u>***never***</u> provided the requested information and its project staff <u>***never***</u> contacted DSIC to arrange for the requested meeting.

24. By its correspondence dated August 20, 2014, DSIC complained about AWC's "deafening" silence and warned that its "lack of response may be prejudicing the rights of DSIC under the bonds." As a direct result of AWC's complete and total failure to respond to DSIC's communications, provide the requested information, and arrange for a site meeting, DSIC advised AWC that it was suspending its investigation unless and until AWC responded to DSIC. A copy of DSIC's e-mail correspondence dated August 20, 2014 is attached hereto and made a part hereof as **Exhibit "G"**.

25. AWC failed to respond, verbally or in writing, to DSIC's August 20, 2014 e-mail correspondence.

26. **<u>AWC's Supplementation and Unilateral Completion</u>**. Unbeknownst to DSIC, on or before May 30, 2014, ten (10) days before issuing its initial demand under the *Bond* to DSIC,

AWC had decided to retain a contractor to replace Prince and complete the *Subcontract*. By e-mail correspondence dated May 30, 2014, AWC advised Prince as follows:

> . . . I was advised almost a year ago to remove Prince from this contract due to the poor workmanship, at that time I said NO, Prince is capable of performing this work and finishing the subcontract. It has been a struggle workwise, culminating in the events of this week.
>
> I have given your people more than enough chances, been made a liar and a laughing stock in front of my staff, bosses and the owner in my defense of Prince.
>
> I have spoken/asked/explained all that I can. What I need is action to get this done. Action that I have not seen from Prince.
> ***At this juncture I stand the risk of LD's, which, since I cannot trust Prince to get these items done <u>I will have to go outside and do as I was advised a year ago and replace your company with someone else</u>***.
>
> I invite you to come to my office for a meeting anytime on Monday, however, ***I will be spending the week-end*** marking up punch lists, working with the owner and <u>***looking for some help with my landscaping***</u>. (Emphasis added)

A copy of AWC's e-mail correspondence dated May 30, 2014 is attached hereto and made a part hereof as **Exhibit "H"**.

27.    Unbeknownst to DSIC, on or about July 29, 2014, AWC contracted with Lafleur Nurseries and Garden Center to remediate and complete Prince's landscaping work. In addition to AWC's completion of Prince's landscaping work through Lafleur Nurseries and Garden Center, AWC further completed the installation of Prince's contractual paver work through its own forces. A copy of AWC's correspondence dated August 29, 2016 is attached hereto and made a part hereof as **Exhibit "I"**.

28.    After learning of AWC's completion efforts, on October 16, 2014, DSIC denied AWC's purported claim under the *Bond* on the basis that AWC's unilateral action to "replace one-hundred percent (100%) of the allegedly defective trees at the Altamonte Springs, Sanford and Lake Mary Sunrail Stations at an estimated cost ... of ... $320,000.00 … constitute[d] a material

breach of the *Bond*, rendering it null and void." A copy of DSIC correspondence dated October 16, 2014 is attached hereto and made a part hereof as **Exhibit "J"**.

29. **AWC's Renewed Claim Against *Bond*.** Nearly two (2) years later, on August 29, 2016, AWC issued its correspondence entitled "*Performance Bond Claim*", declaring that the "remediation of Prince's default is complete and Archer Western hereby demands reimbursement of the $631,148.65 in costs incurred". AWC reiterated that its completion/supplementation was undertaken "[p]ursuant to its rights under Article 8.1 of the Subcontract". *See* **Ex. "I"**.

### III.   DECLARATORY RELIEF SOUGHT

30. DSIC re-alleges and re-avers the allegations of paragraph 1 through 29 hereof, as if fully set forth herein.

31. There is a bona fide present controversy between the parties covering the rights and obligations of DSIC under the *Bond*.

32. AWC asserted a claim against the *Bond* on July 9, 2014 (**Ex. "D"**), to which DSIC responded promptly by its communications with AWC dated July 14, 2014 (**Ex. "E"**), July 18, 2014 (**Ex. "F"**), and August 20, 2014 (**Ex. "G"**).

33. AWC was completely and totally non-responsive to DSIC's communications, requests for information and documentation, and demands for a site meeting with AWC. AWC's actions and/or inactions impaired, hindered, and obstructed DSIC's ability to investigate and elect its remedy under the *Bond*.

34. Prior to pursuing its claim under the *Bond*, AWC had already decided to replace Prince with another completion contractor. Indeed, while AWC refused to respond to DSIC repeated requests for information, AWC was in the process of, and did, in fact, retain a completion contractor to perform the remaining *Subcontract* work.

35. AWC's actions and/or inactions constitute a material breach of the *Bond* by improperly performing the work under the *Subcontract*, without allowing DSIC the opportunity to exercise its contractual right to remedy the default in violation of paragraph 4 of the *Bond*.

36. DSIC seeks a declaration that AWC has materially breached and rendered the *Bond* null and void.

37. DSIC has retained the undersigned counsel to represent its interests in the instant action, and is required to pay a reasonable fee for such services. Pursuant to Section 7 of the *Bond*, coupled with the reciprocal nature of Section 57.105(7), *Fla.Stat.*, DSIC is entitled to recover its attorneys' fees and costs for pursuing the instant action against AWC.

WHEREFORE, Plaintiff DSIC respectfully requests that this Honorable Court enter a judgment in its favor and against Defendant AWC: (a) finding that AWC has breached the *Bond* by unilaterally completing the *Subcontract*; (b) declaring that DSIC has no obligations to AWC under the *Bond* and that the *Bond* is null and void, thereby eliminating any potential and/or future liability of DSIC thereunder; (c) awarding DSIC its attorneys' fees and costs incurred in connection with the prosecution of the instant action; and (d) awarding DSIC such other and further relief as may be necessary, just and proper under the circumstances.

**DATED** this 16th day of November, 2016.

        **ETCHEVERRY HARRISON LLP**
        Attorneys for DSIC
        150 South Pine Island Road, Suite 105
        Ft. Lauderdale, FL 33324
        Phone: (954) 370-1681
        Fax: (954) 370-1682
        etcheverry@etchlaw.com
        geller@etchlaw.com

        By:   */s/ Edward Etcheverry*
             Edward Etcheverry, Fla. Bar No.: 856517
             Jeffrey S. Geller, Fla. Bar No.: 63721