# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**DEVELOPERS SURETY AND**
**INDEMNITY COMPANY,**

      **Plaintiff,**

v.                                                                                  Case No:   6:16-cv-1875-Orl-40KRS

**ARCHER WESTERN CONTRACTORS,**
**LLC,**

      **Defendant.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT:**

This cause came on for consideration without oral argument on the following motion filed herein:

> **MOTION:**   **MOTION FOR LEAVE TO INTERVENE (Doc. No. 44)**
>
> **FILED:**     February 8, 2017

This motion was referred to me by the presiding district judge, the Honorable Paul G. Byron, for issuance of a report and recommendation.

### I.   FACTUAL BACKGROUND.[1]

This action was originally filed by Plaintiff Developers Surety and Indemnity Company ("DSIC") against Defendant Archer Western Contractors, LLC ("Archer"). DSIC alleges that Archer, as contractor, and Prince Land Services, Inc. ("Prince"), as subcontractor, entered into a formal Subcontract Agreement (the "Subcontract") for the performance of certain "Landscaping and

---

[1] For purposes of the factual background, I recite the facts as alleged in Plaintiff's Amended Complaint. Doc. No. 10.

Irrigation" work on a project known as the "Orlando Sunrail Station Finishes" (the "Project"). Doc. No. 10, ¶ 8; Doc. No. 10-1. DSIC issued a Subcontractor Performance Bond bearing No. 504957P (the "Bond") on behalf of Prince, as principal, with Archer, as obligee, covering Prince's bonded work under the Subcontract. Doc. No. 10, ¶ 11; Doc. No. 10-2.

In the event of Prince's default or failure to perform under the terms of the Subcontract, the Subcontract provides Archer with several remedies exclusively against Prince. Doc. No. 10, ¶ 9; Doc. No. 10-1, at 7. In the event of a default *and* termination, the Subcontract provides Archer with remedies against both Prince and DSIC. Doc. No. 10, ¶ 10; Doc. No. 10-1, at 8.

Prince performed its work from 2012 through the spring of 2014, but as the Project neared completion, issues arose between Prince and Archer concerning portions of Prince's work. Doc. No. 10, ¶ 13. In accordance with Articles 8.1 ("Failure to Perform and Default") and 7.11 ("Warranty Provisions") of the Subcontract, Archer issued a letter to Prince advising that the work performed by Prince failed to meet the landscaping and irrigation requirements for the Project. *Id.* ¶ 14; Doc. No. 10-3. Archer gave Prince 72 hours to cure the alleged deficiencies. *Id.*

By correspondence to DSIC dated July 9, 2014, Archer declared Prince to be in default of the Subcontract, asserted a claim, and demanded that DSIC perform under the Bond. Doc. No. 10 ¶ 16; Doc. No. 10-4. DSIC responded to Archer in a July 14, 2014 correspondence in which it: (1) indicated that it had commenced a preliminary investigation; (2) provided Archer with a list of information/documentation necessary for its investigation; (3) requested a meeting with Archer to discuss the default allegations; and, (4) advised that it would formally respond to Archer's claim "within fifteen (15) calendar dates [sic] of receipt of the foregoing enumerated documents." Doc. No. 10, ¶ 17; Doc. No. 10-5. DSIC contends that Archer failed to respond to that correspondence or any of DSIC's subsequent efforts to communicate with Archer. Doc. No. 10, ¶¶ 18-25.

Unbeknownst to DSIC, on May 30, 2014, Archer sent email correspondence to Prince, advising Prince that it had decided to retain a contractor to replace Prince and complete the Subcontract work. *Id.* ¶ 26; Doc. No. 10-8. On or about July 29, 2014, Archer contracted with Lafleur Nurseries and Garden Center to remediate and complete Prince's landscaping work. Doc. No. 10, ¶ 27; Doc. No. 10-9. Archer used its own workers to complete the installation of Prince's contractual paver work. *Id.* After learning of Archer's efforts, on October 16, 2014, DSIC denied Archer's purported claim under the Bond on the basis that Archer's unilateral action to remediate and complete Prince's work at an estimated cost of $320,000.00 constituted a material breach of the Bond, rendering it null and void. Doc. No. 10, ¶ 28; Doc. No. 10-10. On August 29, 2016, Archer sent DSIC a correspondence entitled "Performance Bond Claim," seeking reimbursement of $631,148.65 for costs incurred in the remediation of Prince's work. Doc. No. 10, ¶ 29.

DSIC alleges that Archer never terminated Prince's rights under the Subcontract and, at no point, sought to enforce its rights under Article 8.2 ("Failure of Performance – Termination for Default by Contractor") of the Subcontract. Doc. No. 10, ¶ 15. DSIC thus filed this action, in which it seeks a declaratory judgment that Archer materially breached the Bond, rendering it null and void. Archer has filed a counterclaim in which it seeks a declaratory judgment that DSIC breached the Bond and damages for breach of contract. Doc. No. 14.[2]

Pursuant to Federal Rule of Civil Procedure 24, Prince moves to intervene in this action, so it may assert a breach of contract claim against Archer. DSIC and Archer do not oppose the motion.

---

[2] DSIC has filed a motion to dismiss Archer's declaratory judgment claim on the basis that it is duplicative of the breach of contract claim. *See* Doc. No. 35. That motion remains pending and will be addressed by separate order.

## II. LEGAL STANDARD.

The procedure of intervention allows third parties to inject themselves into lawsuits in which they have an interest. There are two types of intervention: (1) intervention as of right; and (2) permissive intervention. Fed. R. Civ. P. 24.

First, a party has a right to intervene in a lawsuit when either a federal statute grants an unconditional right to intervene, or the party has an interest in the outcome of the case and no existing party adequately represents the intervenor's interest. Fed. R. Civ. P. 24(a). The United States Court of Appeals for the Eleventh Circuit has expressed this standard as a four-part test:

> This court has interpreted this rule to require a party seeking intervention of right to demonstrate that: "(1) his application to intervene is timely; (2) he has an interest relating to the property or transaction which is the subject of the action; (3) he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest; and (4) his interest is represented inadequately by the existing parties to the suit."

*Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004) (quoting *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 593 (11th Cir. 1991)).

Second, in its discretion, a court may permissively allow a party to intervene in certain circumstances. Fed. R. Civ. P. 24(b). Permissive intervention is appropriate when: (1) a federal statute confers a conditional right to intervene; or (2) an applicant's claim or defense and the main action have a question of law or fact in common. *Id.* In addition, courts "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties" when considering a motion for permissive intervention. *Id.*

Prince seeks intervention as of right. If intervention as of right is not granted, Prince alternatively seeks permissive intervention.

### III. ANALYSIS.

There are two preliminary matters that merit discussion. First, I note that Prince's motion is signed by Tracy M. White, Esq. Doc. No. 44, at 8. Attorney White is not a member in good standing of the Bar of this Court due to failure to pay the required renewal fee. Accordingly, Attorney White is not permitted to file papers in this Court. Nevertheless, because Prince's co-counsel of record, Adam C. Linkhorst, Esq., is a member in good standing of the Bar of this Court, I have not stricken the motion.

Second, Prince's motion fails to comply with the requirements of Rule 24 because it is not, technically, a "pleading." Rule 24 directs potential intervenors to file a motion to intervene that "state[s] the grounds for intervention" and is "accompanied by a pleading setting forth the claim or defense for which intervention is sought." Fed. R. Civ. P. 24(c). Prince's motion is not accompanied by such a pleading. Standing alone, this would be sufficient grounds to deny the motion. Rather than delay the resolution of the intervention issue further by denying the motion without prejudice, I will address the merits of Prince's motion despite the noncompliance with Rule 24(c).

*A. Intervention as of Right.*

As discussed above, there are four criteria that a prospective intervenor must meet to intervene as of right. First, the prospective intervenor's motion to intervene must be timely. Fed. R. Civ. P. 24(a). Prince's motion was filed within two months of DSIC's amended complaint and Archer's counterclaim and the parties have yet to engage in substantial discovery. It appears, therefore, that Prince's motion is timely.

Next, an intervenor must have an interest relating to the property or transaction that is the subject of the underlying lawsuit. *Id.*; *Stone*, 371 F.3d at 1308. Here, Prince contends that it was

unlawfully removed from the Project after having performed its scope of work in accordance with the Subcontract. Doc. No. 44, at 2-3. Prince seeks to intervene so it may initiate a suit against Archer for breach of contract, and thus claims it "undoubtedly has an interest in any funds collected by [Archer] if the Bond is declared valid as requested in [Archer's] Counterclaim." *Id.* at 5.

"[A] party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002) (citation omitted). "[A] legally protectable interest 'is something more than an economic interest. What is required is that the interest be one which the *substantive* law recognizes as belonging to or being owned by the applicant.'" *Mt. Hawley Ins. Co. v. Sandy Lake Prop., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting *United States v. S. Fla. Water Mgmt. Dist.*, 922 F.2d 704, 710 (11th Cir. 1991)). Notably, Prince has not cited any case establishing the substantive legal right of a subcontractor to intervene on a dispute over breach of a performance bond. Prince merely asserts an interest in the funds Archer might recover in this litigation. However, an interest contingent upon the outcome of other pending litigation is not a legally protectable interest. *Mt. Hawley Ins. Co.*, 425 F.3d at 1311 & n. 6 (collecting cases).

Because Prince has not demonstrated a direct, substantial, legally protectable interest in this litigation, I recommend that the Court find it is not entitled to intervention as of right.

*B. Permissive Intervention.*

Courts have discretion to allow a party to intervene in a case when the party's claim and the main action have in common a question of law or fact, or a statute confers a conditional right to intervene. Fed. R. Civ. P. 24(b). When determining whether to permit this sort of intervention, courts must consider whether the intervention will cause undue delay or prejudice to the original parties. *Id.* "[I]t is wholly discretionary with the court whether to allow intervention under Rule

24(b) and even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." *Purcell v. Bankatlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (quoting *Worlds*, 929 F.2d at 595). Furthermore, if a prospective intervenor could protect its interests in a separate action, it is less likely that a court will abuse its discretion if it refuses to permit that party to intervene–particularly where the court has reason to think that allowing intervention would make the case more cumbersome. *Worlds*, 929 F.2d at 595 n.20 (citations omitted).

Here, allowing Prince to intervene for the purposes of litigating whether it breached the Subcontract would unduly broaden the issues in this case and make the litigation more cumbersome than it otherwise would be. DSIC alleges that Prince failed to perform under the contract, and in its Answer, Archer admits the same. Doc. No. 10, ¶ 13; Doc. No. 14, ¶ 13. Prince acknowledges in its motion that "both parties aver that Prince breached the Subcontract by performing substandard work," but it denies those averments. Doc. No. 44, at 5. Consequently, allowing Prince to intervene in this case would mean litigating the issue of Prince's performance—an issue that is not in dispute between DSIC and Archer. There is no reason to expand this litigation when Prince may bring its claims against Archer in a separate suit.

I am cognizant that DSIC and Archer do not oppose Prince's motion. However, the Court is not required to permit intervention merely because the existing parties do not object. Accordingly, I recommend that the Court decline to permit Prince to intervene because its intervention would likely make this litigation cumbersome, and because other methods are available through which Prince can seek the same relief it hopes to obtain in the present case. *Worlds*, 929 F.2d at 595 n.20.

## IV.     RECOMMENDATION.

Based on the foregoing, I respectfully recommend that the Motion for Leave to Intervene (Doc. No. 44) be **DENIED**.

### NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on April 3, 2017.

*Karla R. Spaulding*
KARLA R. SPAULDING
UNITED STATES MAGISTRATE JUDGE


Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy