UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY, a foreign corporation, | ) ) ) | |
| Plaintiff, | ) ) ) | Case No. |
| v. | ) ) | 6:16-CV-1875-ORL-40-KRS |
| ARCHER WESTERN CONTRACTORS, LLC A foreign corporation, | ) ) ) ) | |
| Defendant. | ) ) ) | |

## DEFENDANT ARCHER WESTERN CONTRACTORS, LLC'S SUPPLEMENTAL BRIEF REGARDING PARAGRAPH 6(a) OF PERFORMANCE BOND AND ARTICLE 8.1 OF PRINCE SUBCONTRACT

Defendant, Archer Western Contractors, LLC ("Archer"), by and through its attorneys, Watt, Tieder, Hoffar & Fitzgerald, LLP, hereby files its Supplemental Brief, per the Court's Order of April 13, 2018 (Dkt. No. 125), regarding the following issue:

**Whether Developers Surety and Insurance Company ("DSIC") may be liable to Archer Western Contractors, LLC ("Archer") for the cost of corrective and completion work performed by LaFleur Nurseries & Garden Center ("LaFleur") pursuant to Paragraph 8.1 of the Subcontract dated May 21, 2012 (Doc. 10-1), in conjunction with Paragraph 6(a) of the Performance Bond dated May 21, 2012 (Doc. 10-2).**

Archer responds that DSIC <u>is liable</u> to Archer for the cost of corrective and completion work performed by LaFleur commencing on July 26, 2014.[1]

---

[1] As explained in its previously-filed briefs, Archer is only seeking LaFleur's completion/correction work pursuant to Article 8.1 of the Prince Subcontract, which commenced on July 26, 2014 (one day after the 15-calendar day period for DSIC to select a performance option under Par. 4 of the Bond expired, i.e., July 25, 2014). Archer is <u>not</u> seeking from DSIC the entirely separate, one-time clean-up costs that Archer separately hired LaFleur to perform at the Sanford SunRail Station on June 28, 2014, consistent Article 6.4 of the Prince Subcontract (rather than Article 8.1 of the Prince

1

I.  **Florida Courts Recognize That Purpose Of Performance Bond Is To Ensure The Correction And Completion Of Defaulted Bond Principal's [Prince's] Work** *Per the Bonded Contract's Terms*.

In *National Fire Ins. Co. of Hartford v. Fortune Constr. Co.,* 320 F.3d 1260, 1274-1276 (11th Cir. 2003), the Eleventh Circuit, citing *Am Home Assurance Co. v. Larkin Gen. Hosp., Ltd.,* 593 So.2d 195, 198 (Fla. 1992) and other authorities, recognized that: "[a]s a general proposition, the true performance bond requires a surety to guarantee the performance [of the bond principal] through ***completion of the underlying contract,***" and that the surety's obligation is based both upon both: 1) the terms of the performance bond itself; and 2) the contract that is incorporated by reference into the bond (bracketed text added for clarification, and bolded/italicized font added for emphasis):

> …However, ***unlike the performance bond in Larkin General Hospital,*** the bonds at issue in this case ***expressly incorporated the subcontracts,*** which, in turn, do expressly provide for liquidated delay damages.
>
> *Larkin General Hospital* could possibly be interpreted to mean that a performance bond surety cannot be held liable for, or denied subrogation for, delay damages, whether liquidated or unliquidated, unless the responsibility for delay damages is specified on the face of the performance bond. However, we do not read the decision that broadly. [Footnote omitted]. ***The "purpose of the bond" must be considered, which requires reference to the contract secured by the bond.*** Where a provision for liquidated delay damages ***is clearly delineated in the underlying contract and incorporated by reference into the bond,*** the surety is on notice of the time element of the performance and the contractual consequences of failure to timely perform ***in accordance with the contract.***
>
> While it is true that the terms of the bonds in this case do not expressly require the surety to assume responsibility for delay, "[i]t is the general rule of contract law that where a writing expressly refers to and sufficiently describes another document, the other document is to be interpreted as part of the writing." *Lord & Son Constr., Inc. v. Roberts Electrical Contractors, Inc.,* 624 So.2d 376, 377 n. 2 (Fla. 1st DCA 1993). ***Even after Larkin General Hospital, Florida courts have***

---

Subcontract). (See, e.g., Archer's Motion for Summary Judgment, Dkt. No. 82, pp. 2-3, 13; Archer's Response to DSIC's Motion for Summary Judgment, Dkt. No. 111, pp. 8-9, n. 24).

*continued to utilize the well-established doctrine of incorporation by reference to impose liability on a performance bond surety. See DCC Constructors, Inc. v. Randall Mech. Inc.,* 791 So.2d 575, 576–77 (Fla. 5th DCA 2001); *Southwest Fla. Retirement Ctr. v. Fed Ins. Co.,* 682 So.2d 1130, 1132–33 (Fla. 2d DCA 1996), *aff'd,* 707 So.2d 1119 (Fla.1998). The "purpose" of the performance bonds was to insure performance *in accordance with the terms of the respective subcontracts,* and those terms plainly include adverse direct consequences for delay. Therefore, under the **\*1276** particular facts of this case, *the unequivocal delay damages provisions of the subcontracts are properly considered part of the bonds issued by National Fire because of the incorporation by reference. . . .*

*Id.* at 1274-1276 (bolded italics supplied for emphasis); *Accord, CC-Aventura, Inc. v. Weitz Company, LLC,* No. 06-21598-CIV, 2008 WL 2414983 at \*3-5 (S.D. Fla. June 12, 2008).[2]

**III. Reading Paragraph 6(a) Of The Performance Bond "Harmoniously" With Article 8.1 Of The Prince Subcontract (Which Is Incorporated By Reference Into The Performance Bond), Demonstrates That DSIC Is Liable To Archer For The Cost Of Corrective And Completion Work By LaFleur.**

Paragraph 6(a) of the Bond provides (bold and underline supplied for emphasis):

**The Surety shall be <u>liable</u> for:**

a. The <u>responsibilities</u> of the Subcontractor for <u>correction</u> of defective work and <u>completion</u> of the <u>Subcontract Work</u>.

Black's Law Dictionary's (Seventh Edition) defines "responsibility," in part, as "the word simply means liable to be made to account or pay and we might call this sense of the word "'legal accountability.'" Merriam-Webster defines "responsibility," in part, as "the quality or state of being responsible; such as: a: moral, legal, or mental accountability."

The first page of the Performance Bond provides (bold and all capitals in original, underlines and bracketed material supplied for emphasis and clarification, respectively):

---

[2] The June 12, 2008 *CC-Aventura* Order/Opinion cited in this instant Supplemental Brief is different from, and should not be confused with, the separate *CC-Aventura* Order/Opinion of July 14, 2008 previously cited in Archer's Motion for Summary Judgment, Dkt. No. 82, at pp. 6-7.

3

**WHEREAS**, Subcontractor has by written agreement dated May 21, 2012 entered into Subcontract Number 211186S07 with Obligee [Archer] for the performance of **SUBCONTRACT WORK** Installation of Landscape and Irrigation at CFCRT Sunrail project <u>which subcontract is by reference made a part hereof</u> (the "Subcontract") for and at the **PROJECT** Orlando Sunrail Station Finishes.

Article 8.1 then shows the "harmonious"[3] connection with Paragraph 6(a) of the Performance Bond (both per the common underlined terms, and also given that the Prince Subcontract <u>in its entirety</u> is incorporated by reference into the Performance Bond):

> **8.1 Failure of Performance and Default.** If the *Contractor* **[Archer]** *determines at its sole discretion* that the Subcontractor [Prince] has: (i) refused or failed to supply enough properly skilled workers, proper materials, or maintain the Schedule of Work; (ii) failed to make prompt payment for, or failed to prevent claims of non-payment from, its workers, subcontractors or suppliers of any tier; (iii) disregarded Laws or orders of any public authority having jurisdiction; or (iv) otherwise materially breached, a provision of this Agreement; *and Subcontractor fails within seventy-two (72) hours after receipt of written notice* … to commence and continue satisfactory **correction** of such default with diligence and promptness, *the Contractor* **[Archer]**, *without prejudice to any other rights or remedies,* shall have the right to any or all of the following remedies: (i) supply such number of workers and quantity of materials, equipment and other facilities as the Contractor deems necessary for the **completion** of the Subcontractors Work, or any part thereof which the Subcontractor has failed to **complete** or perform after the aforesaid notice, and charge the cost thereof to the Subcontractor, who shall be liable for the payment of same including reasonable overhead, profit and attorney's fees; *(ii) contract with one or more additional contractors* **[i.e., LaFleur]** *to perform such part of the Subcontractor's Work as the Contractor shall determine will provide the most expeditious* **completion** *of the total Work and charge the cost thereof to the Subcontractor who shall be liable for the payment of same including reasonable overhead and profit;* (iii) discharge the claim of non-payment; and/or (iv) withhold payment of any moneys due the Subcontractor pending **corrective** action to the extent required by and to the satisfaction of the Contractor, Owner and the Architect/Engineer. Any costs incurred by Contractor under this article, including attorneys' fees, shall to deducted from funds otherwise due Subcontractor under this Agreement.. .

---

[3] *CC-Aventura, Inc. v. Weitz Co., LLC,* 492 Fed.Appx. 54, 56 (11th Cir. 2012) (Courts to read all provisions in the relevant contract documents "harmoniously in order to give effect to all provisions, as Florida law requires…").

> *Subcontractor* **[Prince]** *shall provide its surety* **[DSIC]** *with all notices[4], letters, or email, from the Contractor* **[Archer]** *referred to in this paragraph.*

(Bolded italics/underlines and bracketed material supplied above and below for emphasis/clarification).  Finally, it is also highly-significant that the last quoted sentence of Art. 8.1 above specifically references Prince's "surety," i.e., DSIC: "Subcontractor [Prince] shall provide its *surety* **[DSIC]** with all notices, letters, or email, from the Contractor [Archer] referred to in this paragraph."  For all of the foregoing reasons, DSIC cannot possibly avoid liability to Archer for the cost of LaFleur's correction and completion work when both Paragraph 6(a) of the Bond and Article 8.1 of the Prince Subcontract are read "harmoniously" and in conjunction with each other.[5]

WHEREFORE, Defendant Archer Western Contractors, LLC, respectfully requests this Court to grant its Motion for Summary Judgment (Dkt. No. 82), to deny Developers Surety and Indemnity Company's Motion for Summary Judgment (Dkt. No. 96), and for any and all other relief deemed just and appropriate by this Court.

DATED: April 20, 2018            Respectfully submitted,

**Watt Tieder Hoffar & Fitzgerald**

Mariela M. Malfeld               By:  /s/ *John E. Sebastian*
Florida Bar No.: 53084           John E. Sebastian (admitted Pro Hac Vice)
1200 Brickell Avenue, Suite 1950 Frank J. Marsico (admitted Pro Hac Vice)
Miami, Florida 33131             10 S. Wacker Dr., Suite 1100
Phone: (305) 777-3572            Chicago, Illinois 60606
Facsimile: (786) 693-7797        Phone: 312-219-6900
mmalfeld@watttieder.com          jsebastian@watttieder.com
                                 fmarsico@watttieder.com

---

[4] Said default notices from Archer to Prince of July 3, 2014 are referenced at Stipulation of Facts Regarding Archer's Motion for Summary Judgment, Dkt. No. 121, ¶51; Archer's Statement of Undisputed Facts, Dkt. No. 82-2 at ¶¶51-54; and DSIC's Response to Archer's Statement, Dkt. No. 93 at ¶¶51-54.

[5] See n. 3, supra.

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| DEVELOPERS SURETY AND INDEMNITY COMPANY, a foreign corporation, </br></br> Plaintiff, </br></br> v. </br></br> ARCHER WESTERN CONTRACTORS, LLC, a foreign corporation, </br></br> Defendant. | Case No. </br> 6:16-CV-1875-ORL-40-KRS |

**CERTIFICATE OF SERVICE**

To:

| | |
|---|---|
| Guy Harrison </br> Edward Etcheverry </br> ETCHEVERRY HARRISON LLP </br> 150 South Pine Island Road, Suite 105 </br> Ft. Lauderdale, FL 33324 </br> harrison@etchlaw.com </br> etcheverry@etchlaw.com | Adam Charles Linkhorst </br> Tracy M. White </br> LINKHORST & HOCKIN, PA </br> 4495 Military Tr, Suite 106 </br> Jupiter, FL 33458 </br> acl@floridahardhatlaw.com </br> tmw@floridahardhatlaw.com |

The undersigned certifies that on **April 20, 2018,** he caused **Archer Western Contractors, LLC's Supplemental Brief Regarding Paragraph 6(a) of Performance Bond and Article 8.1 of Prince Subcontract** to be electronically filed with the Clerk of the Court CM/ECF system, which shall send notification of such filing via electronic-mail to all counsel of record.

*/s/ John E. Sebastian*_____