UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:16-cv-1875-PGB-KRS

DEVELOPERS SURETY AND INDEMNITY
COMPANY, a foreign corporation,

 Plaintiff,

v.

ARCHER WESTERN CONTRACTORS, LLC,
a foreign corporation,

 Defendant.
_____/

**PLAINTIFF'S SUPPLEMENTAL BRIEF ON PARAGRAPH 6 OF
PERFORMANCE BOND AND ARTICLE 8.1 OF PRINCE SUBCONTRACT**

 Plaintiff, DEVELOPERS SURETY AND INDEMNITY COMPANY ("DSIC") submits its *Supplemental Brief Regarding Paragraph 6 of Performance Bond and Article 8.1 of Prince Subcontract* as follows:

 If the Court is inquiring as to whether the *Performance Bond*, by virtue of Paragraph 6, allows ARCHER WESTERN CONTRACTORS, LLC ("AWC") to exercise a remedy pursuant to Article 8.1 of the *Subcontract* (such as hiring LaFleur Nurseries & Garden Center ("LaFleur") to correct/complete) and then recover those costs directly from DSIC *without having to comply with the Bond's requirements* (including notice and allowing DSIC to exercise the options available to it)*,* then the *Bond* and *Subcontract*, read together, ***do not*** allow such a course of action.

 Before presenting the legal discussion, it is crucial to note that AWC has waived its right *in this case* to claim that the *Subcontract* and *Bond* allow it to act without regard to DSIC's right to notice and opportunity to perform. AWC defaulted DSIC's bonded principal, Prince Land

Services, Inc. ("Prince"), under Article 8.1 of the *Subcontract* and demanded DSIC *perform pursuant to the Bond*. The *very act of providing notice to DSIC and demanding performance under the Bond* vitiates AWC's entire theory that it could act unilaterally and hold DSIC liable later. AWC "knowingly and intelligently" chose to follow the *Bond*. Thus, AWC had to comply with the *Bond's* requirements that DSIC have notice and opportunity to perform. Interpreting the *Bond* as allowing unilateral action would give AWC a "bonus right" that it *did not seek in this case*. *See State Farm Mut. Auto. Ins. Co. v. Yenke,* 804 So. 2d 429, 432 (Fla. 5th DCA 2001) ("waiver is the intentional or voluntary relinquishment of a known right").

## I. Florida Legal Principles for Interpreting Surety Bonds

In *American Home Assurance Company v. Larkin General Hospital*, 593 So.2d 195 (Fla. 1992), the Florida Supreme Court reaffirmed the rule that "the surety's liability for damages is limited by the terms of the bond," and "the liability of a surety should not be extended by implication beyond the terms of the contract, *i.e.*, the performance bond." *Id*. at 197. Further, "when the unambiguous language of a contract sets forth the manner in which a party must exercise a right in the event of a default, the party is bound by and must strictly adhere to the language." *Sch. Bd. of Escambia County, Fla. v. TIG Premier Insurance Co.*, 110 F.Supp.2d 1351, 1353 (N.D. Fla. 2000). Finally, and crucial to the present case, when a bond contains performance options for the surety, those options are considered a "contractual right to minimize damages" and the notice requirement necessary to allow the surety's exercise of this right is a "a critical . . . provision of the surety contract." *Ins. Co. of N. Am. v. Metro. Dade County*, 705 So. 2d 33, 35 (Fla. 3d DCA 1997).

There is only one circumstance where a court has found a surety liable for the exercise of a remedy in the bonded contract without complying with the bond itself. In *Dooley and Mack Constructors, Inc. v. Developers Sur. and Indem. Co.*, 972 So.2d 83 (Fla. 3d DCA 2007), the

subcontract allowed the contractor to complete the work, and provided that "[t]*he Subcontractor, its surety, and any bond shall be liable*" for the costs. Although *Dooley and Mack* recognized the general rule that hiring a completion contractor without first giving notice "would indeed result in a termination of the surety's obligations," the court departed from this rule because of the "***additional decisive provision***" which explicitly allowed Dooley to complete and made "the surety" liable for the cost. *Id*. at 894.

## II. The *Subcontract* and *Bond* Do Not Allow Direct Recovery Against the Surety Under Article 8.1

*Subcontract* Article 8.1 does not reference "the surety" or "the bond" as being "liable" for AWC's cost of exercising the remedies. Article 8.1, therefore, lacks the explicit language that *Dooley and Mack* requires in order for AWC to hire LaFleur and recover the costs without first complying with the *Bond's* provisions. Similarly, Paragraph 6 of the *Bond* does not reference the *Subcontract* in any fashion, let alone Article 8.1's remedies. Interpreting Paragraph 6 of the *Bond* to make those remedies directly attributable to DSIC would violate every fundamental principle of Florida suretyship law.

First, such a reading would dramatically expand DSIC's liability by implication. Paragraph 6 would be re-written to specifically allow recovery of *Subcontract* remedies as monetary damages "without any need for AWC to comply with *Bond* Paragraph 4." Article 8.1 of the *Subcontract* would be re-written to include "the surety and the Bond shall be liable for such costs." These are provisions that *do not exist in the documents*. Such an interpretation would directly contravene *Larkin'*s dictate that DSIC's liability is limited to "the terms of the bond" and "the liability of a surety should not be extended by implication."

Not only would such an interpretation "write into" the *Bond* and *Subcontract* phantom provisions that are *not* there, it would also "write out" the actual provisions that *are* there.

Paragraph 6 of the *Bond* does not refer to any specific remedy. Thus, if Paragraph 6 were interpreted to make DSIC liable to AWC for *a particular* remedy, then it would make DSIC liable to AWC for *any and all* remedies, without any requirement for notice or opportunity to perform. This would write Paragraph 4 *entirely out of the Bond*. It is impossible to square such an interpretation with Florida law. ***The Bond cannot take away from DSIC "critical" rights that it expressly grants.***

The *Bond* "sets forth the manner in which [AWC] must exercise a right in the event of a default" and "[AWC] is bound by and must strictly adhere to the language." *Escambia County, supra.* Paragraph 4 of the *Bond*, requiring notice to the surety and options for the surety to control the completion costs, sets forth "bargained for" contract rights "to minimize damages." *I.N.A., supra.* The notice requirement is considered a "critical" surety right under Florida law. *Id.* Nothing in Paragraph 6 states or even implies that it overrides Paragraph 4 and such an interpretation would eliminate DSIC's "critical" and "bargained for" rights.

Finally, it must be noted that AWC spoke clearly, in the *Subcontract*, about when it could exercise a remedy without notice and later hold DSIC liable, and positively excluded that remedy from Article 8.1. Article 8.2 expressly states that, in the event of a termination, AWC can complete the work and hold DSIC liable for the cost. This creates a direct right of recovery outside the terms of the *Bond*. *Dooley, supra.* When AWC does *not* terminate, but only declares a contract default under Article 8.1, the *Subcontract* does not allow AWC to hold DSIC liable for the cost. Under *Dooley, supra*, this silence unambiguously excludes any such remedy against DSIC and requires AWC to proceed under the *Bond*.[1]

---

[1] There is no dispute that AWC, when defaulting Prince, fully quoted and relied upon *Subcontract* Article 8.1 and not Article 8.2. When providing notice to DSIC, AWC only relied on Section 8.1 and demanded DSIC *perform* pursuant to *Bond*. In fact, the *very act of providing notice to DSIC and making a claim on*

Even without *Dooley*, the result would be the same. Florida contract law recognizes that when a contract specifically speaks to a remedy in one area, and not another, the silence is deemed to be an exclusion of the remedy. *Home Development Company of St. Petersburg v. Bursani*, 178 So.2d 113 (Fla. 1965) ("The absence of a provision from a contract is evidence of an intention to exclude it rather than an intention to include it."); *Azalea Park Utilities, Inc. v. Knox-Florida Dev. Corp.*, 127 So. 2d 121, 123 (Fla. 2d DCA 1961) ("The appellant's position in the instant case would, in effect, broaden the original contract by implying that the silence concerning sewage tap-ins permitted a charge for this action. *We cannot conceive that the parties overlooked sewage taps when the contract was framed, for the contract is expressly detailed on all other matters*.").

In the *Subcontract*, Prince and AWC were crystal clear about when AWC could pursue the *Bond* without notice (Article 8.2) and when AWC could not (Article 8.1). Thus, an interpretation of *Bond* Paragraph 6 that would allow the assertion of *Subcontract* Article 8.1 remedies directly against DSIC would re-write not only the *Bond* but also the *Subcontract* itself, to include things that, under Florida law, Prince Land and AWC unambiguously *excluded*. [2]

The only interpretation consistent with Florida law, and that gives full effect to the parties' intent in the *Subcontract* and the *Bond,* is that Paragraph 6 does not create additional rights against DSIC which allows AWC to circumvent DSIC's right to notice and opportunity to perform when AWC declares a default under Subcontract Article 8.1.

---

the Bond negates AWC's entire theory that it could act unilaterally under Section 8.1 and hold DSIC liable later.

[2] Indeed, the reference in Article 8.1 that "the surety" receive notices, by not going further, positively shows that AWC and Prince intended to not include the additional language making the surety automatically liable. Instead, the "declaration of default" language of Article 8.1 tracks, exactly, the "notice" of default required by the *Bond*, and the only consistent interpretation of the two is that, under Article 8.1, AWC must proceed under the *Bond*.

CASE NO.: 6:16-cv-1875-PGB-KRS

**ETCHEVERRY HARRISON LLP**
Attorneys for DSIC
150 South Pine Island Road, Suite 105
Ft. Lauderdale, FL 33324
Phone: (954) 370-1681
Fax: (954) 370-1682
harrison@etchlaw.com
Etcheverry@etchlaw.com
geller@etchlaw.com
service@etchlaw.com

By:  */s/ Edward Etcheverry*
Guy Harrison, Fla. Bar No. 368806
Edward Etcheverry, Fla. Bar No.: 856517

**CERTIFICATE OF SERVICE**

WE HEREBY CERTIFY that on this 26th day of April 2018, we filed the foregoing with the Clerk of the Court using CM/ECF.  We also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By:  */s/ Edward Etcheverry*
Jeffrey S. Geller, Fla. Bar No.: 63721